Case No. 19-3088

_____

## UNITED STATES COURT OF APPEALS OF THE TENTH CIRCUIT

_____

**WENDY COUSER**
Plaintiff/Appellee

**vs.**

**CHAD GAY,**
Defendant/Appellant

_____

**APPELLEE'S BRIEF**

_____

**Appeal from the United States District Court
for the District of Kansas**
The Honorable John W. Broomes, Judge
District Court Case No.: 6:18-cv-01221-JWB-GEB

_____

Debra Loevy
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, IL 60607
(312) 243-5900
debra@loevy.com
*Attorneys for Appellee Wendy Couser*

**ORAL ARGUMENT NOT REQUESTED**

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Plaintiff-Appellee Wendy Couser is excused from filing a corporate

disclosure statement because she is not a "nongovernmental corporate party." *See*

10th Cir. R. 26.1.

# <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT.......................................................i

TABLE OF CONTENTS ................................................................ ii

TABLE OF AUTHORITIES ....................................................iv

STATEMENT OF THE ISSUE.................................................1

STATEMENT OF THE CASE..................................................2

SUMMARY OF THE ARGUMENT .................................................4

ARGUMENT ...................................................................6

I.     The District Court Correctly Ruled that the Defendant County
       Sheriff Is Not Entitled to Eleventh Amendment Immunity When
       Acting in His Law Enforcement Capacity...................................6

       A. The Scope of Immunity Under the Eleventh Amendment ...................6

              1.  The Test for Determining Entitlement to Immunity .................7

              2.  Defendant Bears the Burden of Proof to Show
                  Entitlement to Immunity .........................................9

       B. *Steadfast*, Not *Hunter v. Young*, Controls the Immunity
          Question Here .........................................................10

       C. Application of the *Steadfast* Test Indicates that the Defendant
          County Sheriff Failed to Meet His Burden for Invoking
          Eleventh Amendment Immunity..........................................12

              1.  State Law Characterizes the County Sheriff as an Agent of
                  the County ....................................................14

              2.  The Defendant Sheriff Maintains Autonomy from the State
                  for His Law Enforcement Duties ................................23

3. The County Sheriff Receives His Funding Independent from the State ..............................................................29

4. Defendant Concedes the Final *Steadfast* Factor, Which Strongly Supports the District Court Finding that Defendant Was Not Entitled to Immunity ..........................................31

5. In Sum ...........................................................................33

D. Even if This Court Were to Consider the Arguments Offered by the Kansas Sheriff's Association, Those Arguments Fail to Change the Analysis .............................................................33

1. A Historical Perspective Is Not Relevant to the *Steadfast* Inquiry .............................................................34

2. Newspaper Articles and Letters Are Not Proof ........36

3. The Sheriff's Autonomy in Law Enforcement is the Relevant Inquiry .............................................................36

CONCLUSION ..................................................................................39

STATEMENT IN OPPOSITION TO ORAL ARGUMENT .............................40

CERTIFICATE OF COMPLIANCE .................................................................41

CERTIFICATE OF DIGITAL SUBMISSION ....................................................41

CERTIFICATE OF SERVICE .........................................................................42

# <u>TABLE OF AUTHORITIES</u>

## *Cases*

*Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298
(11th Cir. 2005)...............................................................................5, 22

*Ambus v. Granite Bd. Of Educ.*, 995 F.2d 992 (10th Cir. 1993) ........................8, 31

*Baca v. Colorado Dep't of State*, No. 18-1173, 2019 WL 3938266
(10th Cir. Aug. 20, 2019).......................................................9, 16, 20, 34

*Bd. of Cty. Comm'rs of Lincoln Cty. v. Nielander*, 62 P.3d  247
(Kan. 2003) ...........................................................................15, 20, 28, 30

*Bland v. Roberts*, 730 F.3d 368 (4th Cir. 2013)..............................................21

*Brewster v. Shasta Cty.*, 275 F.3d 803 (9th Cir. 2001)......................................5, 22

*Brown v. Kochanowski*, 2012 WL 4127959 (D. Kan. 2012)..................................19

*Carter v. Barker*, 225 F.3d 653 (4th Cir. 2000)...................................................5, 22

*Christy v. Pennsylvania Tpk. Comm'n*, 54 F.3d 1140 (3d Cir. 1995) ......................9

*COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1215 (10th Cir. 2016) ........10, 25, 31

*Crabbs v. Scott*, 786 F.3d 426 (6th Cir. 2015).....................................................5, 22

*Dean v. Cty. of Gage, Neb.*, 807 F.3d 931 (8th Cir. 2015).................................5, 22

*Eames v. Bd. of Cty. Comm'rs of Cty. of Phillips, State of Kan.*, 733 F.
Supp. 322 (D. Kan. 1990) ..........................................................................37

*Edelman v. Jordan*, 415 U.S. 651 (1974) .................................................................7

*Eller v. Trans Union, LLC*, 739 F.3d 467 (10th Cir. 2013)....................................36

*Estate of Holmes v. Somers*, 2019 WL 1670796 (D. Kan. 2018)............................25

*Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800 (10th Cir. 1998)..........................39

*Franklin v. Zaruba*, 150 F.3d 682 (7th Cir. 1998)................................................5, 22

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
484 U.S. 49 (1987).................................................................................................35

*Hamer v. City of Trinidad*, 924 F.3d 1093 (10th Cir. 2019)..............................24, 35

*Holt ex rel. Holt v. Wesley Medical Center*, LLC, 2002 WL 1067677
(D. Kan. 2002) .........................................................................................................9

*Hunter v. Young*, 238 F. App'x 336 (10th Cir. 2007)..................4, 10, 11, 12, 19, 20

*ITSI TV Prods., Inc. v. Agricultural Assocs.*, 3 F.3d 1289 (9th Cir.1993) ...............9

*Kellogg v. Coleman*, 2019 WL 2207954 (D. Kan. 2019) .......................................20

*Kjorlie v. Lundin*, 1991 WL 290452 (D. Kan. 1991) ..............................................19

*Mancuso v. New York State Thruway Auth.*, 86 F.3d 289 (2d Cir. 1996) ..............10

*Manley v. Bellendir*, 2019 WL 3430563 (D. Kan. July 30, 2019) ....................14, 25

*McCaffrey v. Chapman*, 921 F.3d 159 (4th Cir. 2019).........................13, 24, 26, 28

*McKissick v. Yuen*, 618 F.3d 1177 (10th Cir. 2010)................................................10

*McMillian v. Monroe Cty., Ala.*, 520 U.S. 781
(1997) ................................................................. 4, 5, 12, 21, 22, 23, 24, 26, 28, 29

*Miles v. Kansas*, 2012 WL 3442413 (D. Kan. 2012) .............................................18

*Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274 (1977)...... 6, 7, 8, 11, 14, 29, 31

*Myers v. Brewer*, 2018 WL 3145401 (D. Kan. 2018) .............................................20

*New England Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646 (10th Cir. 1989)........36

*Nielander v. Bd. of Cty. Comm'rs of Republic Cty.*, 582 F.3d 1155
(10th Cir. 2009).................................................................................5, 18

*Owens v. Rush*, 636 F.2d 283 (10th Cir. 1980)..................................28, 37

*Regents of the Univ. of California v. Doe*, 519 U.S. 425 (1997)............................30

*Reid v. Hamby*, 124 F.3d 217 (10th Cir. 1997)....................................5, 22

*Reyes v. Bd. of Cty. Comm'rs of Sedgwick Cty., Kan.*, 2008 WL 2704160
(D. Kan. July 3, 2008)...................................................12, 14, 26, 27, 28

*Ross v. Colo. Dep't of Transp.*, No. 11-cv-02603-REB-KMT,
2012 WL 5975086 (D. Colo. Nov. 14, 2012).........................................16

*Sanders ex rel. Rayl v. Kansas Dep't of Soc. & Rehab. Servs.*,
317 F. Supp. 2d 1233 (D. Kan. 2004)........................................................9

*Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241 (D. Kan. 2004).......................16

*Self v. Cty. of Greenwood*, 2013 WL 615652 (D. Kan. 2013)...............................20

*State v. Hopkins*, 285 P.3d 1021 (Kan. 2012)....................................17, 18

*State v. Lovett*, 839 P.2d 53 (Ct. App. Kan. 1992) ..................................18

*State v. Vrabel*, 347 P.3d 201 (Kan. 2015) ...................................6, 23, 25

*Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250
(10th Cir. 2007).................................... 1-2, 4, 6-16, 19-20, 23-24, 29, 31-32, 34-35

*Sturdevant v. Paulsen*, 218 F.3d 1160 (10th Cir. 2000) ...................6, 7, 8, 21, 31

*Teichgraeber v. Memorial Union Corp. of Emporia State University*,
946 F. Supp. 900 (D. Kan. 1996)...............................................................9

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999)..........................13, 25, 26, 28

*Tootle v. USDB Commandant*, 390 F.3d 1280 (10th Cir. 2004) .......................8, 30

*United States v. Dahda*, 852 F.3d 1282 (10th Cir. 2017) ........................................39

*United States v. Tafoya*, 557 F.3d 1121 (10th Cir. 2009) ...................................8, 30

*United States v. Wright*, 634 F.3d 770 (5th Cir. 2011)........................13, 25, 26, 28

*Van De Weghe v. Chambers*, 569 F. App'x 617 (10th Cir. 2014)..........................15

*Vasquez v. Lewis*, 2013 WL 118442 (D. Kan. 2013) ..............................................18

*Walker v. Connecticut*, 106 F. Supp. 2d 364 (D. Conn. 2000)...............................21

*Waterman v. Tippie*, 2019 WL 2924997 (D. Kan. July 8, 2019) ...........................19

*Wilson v. City of Chanute*, 43 F. Supp. 2d 1202 (D. Kan. 1999) ..........................30

### Other Authorities

FED. R. EVID. 801(c)..................................................................................................36

K.S.A. § 8-605 ..........................................................................................................27

K.S.A. § 19-702(a)................................................................................................5, 17

K.S.A. § 19-703 .....................................................................................................5, 17

K.S.A. §19-801(a)......................................................................................................37

K.S.A. § 19-805(b)...............................................................................................29, 37

K.S.A. §19-805(c)................................................................................................29, 37

K.S.A. § 19-813 .................................................................................5, 6, 14, 17, 20

K.S.A. § 19-817 ........................................................................................................33

K.S.A. § 19-828 ........................................................................................................37

K.S.A. § 19-1901 ...............................................................................26, 27

K.S.A. § 19-1903 ...............................................................................26, 27

K.S.A. §19-1909 ....................................................................................26

K.S.A. §19-1910 ....................................................................................26

K.S.A. §19-1916 ....................................................................................26

K.S.A. §19-1917 ....................................................................................26

K.S.A. §19-1930 ....................................................................................26

K.S.A. § 22-2401a (1) ...........................................................................25

K.S.A. § 60-1202 ..................................................................................27

K.S.A. § 82-162 ....................................................................................16

Kan. Const. art. IX, § 2 ........................................................................20

U.S. Const. amend. XI ............................................................................6

## <u>STATEMENT OF THE ISSUE</u>

In *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250 (10th Cir. 2007), this Court established the four factor test used in this Circuit for determining when an entity acts as "arm of the state," entitling it to invoke Eleventh Amendment immunity. Defendant, however, erroneously relies on earlier case law and fails to apply this relevant test. Where application of each of the four *Steadfast* factors plainly supports that when a county sheriff exercises his law enforcement duties, he is not acting as an arm of the state, did Defendant fail to meet his burden of proof to establish his entitlement to Eleventh Amendment immunity?

## STATEMENT OF THE CASE

On August 28, 2017, twenty-four-year-old Matthew Holmes was stopped by police and sheriff officers, including deputies from the Harvey County Sheriff's Office ("HCSO"). App.00111, 115-16. Holmes remained in his car for several minutes and then exited slowly with his empty hands raised in the air. App.00116. Over the course of the next 21 seconds, the officers shot Holmes with a beanbag gun, fired an electroshock weapon at him, knocked him to the ground, hit him in the head with the butt of a shotgun, and shot him in the back. App.00116. Holmes died at the scene. App.00116-17.

Holmes' estate filed a lawsuit—one claim was the official capacity claim at issue in this appeal against Defendant Harvey County Sheriff Chad Gay ("Defendant"), arguing that Holmes' constitutional rights were violated due to a policy, failure to train and/or a failure to supervise. App.00135. Defendant contends that he was a state actor and is therefore entitled to Eleventh Amendment immunity to bar the claim. App.00135-36. The district court rejected this assertion, holding that "with respect to law enforcement activities, sheriffs are not arms of the state but rather of the county they serve." App.00138. After careful application of the relevant law, the court denied Defendant's claim for Eleventh Amendment immunity. *See* App.00142 ("After a review of Kansas law and the *Steadfast* factors, the court finds that, for the purposes of enforcing laws within their

respective counties (which is the particular function at issue here), sheriffs are arms of the counties they serve. [cite]. Therefore [Defendant's motion] to dismiss on the basis of the Eleventh Amendment [is] denied."). The instant appeal followed.

## SUMMARY OF THE ARGUMENT

Defendant fails to meet his burden to show that he is entitled to Eleventh Amendment immunity. To do so, he was required to apply the current test in this Circuit and demonstrate that a Kansas county sheriff acts as an "arm of the state" when carrying out law enforcement duties. *See Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007). Instead, Defendant erroneously relies on earlier case law and fails to apply the correct test.

Compounding this colossal error, Defendant also relies heavily on three unavailing cases. The first, *Hunter v. Young*, 238 F. App'x 336 (10th Cir. 2007), is a pre-*Steadfast* case in which the plaintiff did not dispute whether the sheriff was a state actor, so the question was never squarely addressed. Accordingly, the *Hunter* Court's characterization is not instructive, much less dispositive. *See Steadfast Ins. Co.*, 507 F.3d at 1253 (despite previous case law discussing an entity's characterization, the Court needs "to consider the status … anew" by applying the Court's delineated test for determining whether the entity is an arm of the state).

In the second case, *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781 (1997), the Court analyzed the role of a sheriff under Alabama's laws, constitution, and court precedent. This ruling provides general guidance about assessing how to characterize an entity, but no Circuit has found that it requires that county sheriffs in other jurisdictions must likewise be characterized as an arm of the state. *See,*

4

*e.g., Franklin v. Zaruba*, 150 F.3d 682, 685 (7th Cir. 1998); *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1304 (11th Cir. 2005); *Reid v. Hamby*, 124 F.3d 217 n.1 (10th Cir. 1997) (unpublished); *Carter v. Barker*, 225 F.3d 653, *3-4, *6 (4th Cir. 2000) (*per curium*); *Brewster v. Shasta Cty.*, 275 F.3d 803 (9th Cir. 2001); *Crabbs v. Scott*, 786 F.3d 426, 430 (6th Cir. 2015); *Dean v. Cty. of Gage, Neb.*, 807 F.3d 931, 942 (8th Cir. 2015). Defendant's claim that *McMillian* requires this Court to conclude that Kansas' county sheriffs are an arm of the state, therefore, resoundingly fails.

Finally, Defendant relies on *Nielander v. Bd. of Cty. Comm'rs of Republic Cty.*, 582 F.3d 1155, 1164 (10th Cir. 2009), a case holding that county attorneys are state actors. But Kansas county attorneys are statutorily defined as state actors; county sheriffs are not. *Compare* K.S.A. § 19-703 (county attorney's duty to represent the state) and 19-702(a) (county attorney's duty to the state) with K.S.A. § 19-813 (sheriff's duty to his county). Thus, the legislature's designations undermine, rather than support, Defendant's positions, and *Nielander* does not help Defendant.

Under the law in this Circuit, which Defendant chooses to ignore, his entitlement to assert Eleventh Amendment immunity depends on whether: (1) the sheriff "is identified as an agency of the state" under state law; (2) the sheriff has autonomy from the state when acting in his law enforcement capacity; (3) the

sheriff has state or county funding; and (4) the sheriff's duties are primarily

concerned with state or local affairs. *Steadfast Ins. Co.*, 507 F.3d at 1253 (citing

*Sturdevant v. Paulsen*, 218 F.3d 1160 (10th Cir. 2000) and *Mt. Healthy City Sch.*

*Dist. v. Doyle*, 429 U.S. 274 (1977)). Application of each of these factors

demonstrates that the county sheriff was not acting as an arm of the state when

carrying out his law enforcement duties. First, Kansas law identifies the county

sheriff as a county officer, not a state officer. *See* K.S.A § 19-813. Second, the

Kansas Supreme Court maintains that the state's statutory framework is designed

to give counties local autonomy in the context of law enforcement. *See State v.*

*Vrabel*, 347 P.3d 201, 211 (Kan. 2015). Third, Defendant concedes that the sheriff

is exclusively locally funded. Lastly,  the sheriff's duties are primarily locally-

focused, and Defendant posits no argument suggesting otherwise. Defendant fails

to meet his burden of proof. He is not entitled to Eleventh Amendment immunity.

## **ARGUMENT**

**The District Court Correctly Ruled that the Defendant County Sheriff Is Not Entitled to Eleventh Amendment Immunity When Acting in His Law Enforcement Capacity**

### A. The Scope of Immunity Under the Eleventh Amendment

In federal suits seeking money damages, the Eleventh Amendment affords

immunity from suit to states and to entities acting on behalf of a state when the

action is in essence one for recovery of money from the state. U.S. Const. amend.

XI; *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Thus, whether a particular entity is eligible for Eleventh Amendment immunity turns on whether the entity acted as an "arm of the state." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977)). This assessment depends on the "nature of the entity created by state law." *Id.* (citing *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000); citation omitted). In general, "Eleventh Amendment immunity extends to states and state entities but not to counties, municipalities, or other local government entities." *Steadfast Ins. Co.*, 507 F.3d at 1253 (citing *Mt. Healthy*, 429 U.S. at 280). This Court's review of the district court's decision denying Eleventh Amendment immunity is *de novo*. *Steadfast Ins. Co.*, 507 F.3d at 1253.

### 1. The Test for Determining Entitlement to Immunity

To determine whether an entity acted as an arm of the state, entitling it to Eleventh Amendment immunity, this Court requires application of a four-factor test, considering: (1) whether "the entity is identified as an agency of the state" under state law; (2) the entity's level of autonomy and "the degree of control the state exercises over the entity"; (3) the amount of state funding the entity receives; and (4) whether the entity is primarily concerned with state or local affairs, which hinges on "the agency's function, composition, and purpose." *Steadfast Ins. Co.*, 507 F.3d at 1253 (citing *Sturdevant*, 218 F.3d at 1162, 1164-65, 1168-69). This

7

Court maintains that even though it was created by the state, "[i]f a state entity is more like a political subdivision—such as a county or city—than it is like an instrumentality of the state, that entity is not entitled to Eleventh Amendment immunity." *Steadfast Ins. Co.* at 1253 (citing *Mt. Healthy*, 429 U.S. at 280; *Sturdevant*, 218 F.3d at 1164-65).

Defendant incorrectly claims that this Court can ignore the *Steadfast* test because the case "broke no new analytical ground." Def. Br. at 20. Then, Defendant relies exclusively on pre-*Steadfast* authority in order to omit the fourth *Steadfast* factor from the test. *See* Def. Br. at 23-24 (setting forth the earlier *Mt. Healthy* test for arm-of-the-state inquiries and citing *Sturdevant*, 218 F.3d at 1164, 1166-69); Def. Br. at 14 (setting forth the earlier *Mt. Healthy* test and citing *Ambus v. Granite Bd. Of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993)). This analysis obviously fails.

Rather, it is clearly established that the Court may not ignore new developments in the law. *See, e.g.*, *United States v. Tafoya*, 557 F.3d 1121, 1129 (10th Cir. 2009) (this Court is "bound to follow the decisions of the Supreme Court and the published decisions of this court.") (citations omitted); *Tootle v. USDB Commandant*, 390 F.3d 1280, 1283 (10th Cir. 2004) (this Court must follow published Tenth Circuit decisions). In fact, this Court recently confirmed that the Eleventh Amendment immunity test in this Circuit for determining whether an

entity is an arm of the state relies on the "four primary factors" set forth in

*Steadfast*. *See Baca v. Colorado Dep't of State*, No. 18-1173, 2019 WL 3938266,

at \*22 (10th Cir. Aug. 20, 2019). Thus, *Steadfast* is the governing law in this

Circuit, and Defendant cannot just ignore it. Instead, he was tasked with showing

that application of the four-factor test entitles him to Eleventh Amendment

immunity. Defendant's appeal fails because he has not met that burden.

### 2. Defendant Bears the Burden of Proof to Show Entitlement to Immunity

Eleventh Amendment immunity is a waivable affirmative defense, thus

defendants bear the burden of proof and persuasion in the application of the four-

factor *Steadfast* test for showing entitlement to invoke immunity. *See, e.g., Sanders*

*ex rel. Rayl v. Kansas Dep't of Soc. & Rehab. Servs*., 317 F. Supp. 2d 1233, 1241

(D. Kan. 2004) (the defendant asserting Eleventh Amendment immunity bears the

burden of proof on that issue); *Teichgraeber v. Memorial Union Corp. of Emporia*

*State University*, 946 F. Supp. 900, 903 (D. Kan. 1996) (finding that Eleventh

Amendment immunity should be treated as an affirmative defense and must be

proved by the party asserting it); *Holt ex rel. Holt v. Wesley Medical Center*, LLC,

2002 WL 1067677 (D. Kan. 2002); *Christy v. Pennsylvania Tpk. Comm'n*, 54 F.3d

1140, 1144 (3d Cir. 1995) ("the party asserting Eleventh Amendment immunity

(and standing to benefit from its acceptance) bears the burden of proving its

applicability."); *ITSI TV Prods., Inc. v. Agricultural Assocs*., 3 F.3d 1289, 1292

(9th Cir.1993) ("the public entity ought to bear the burden of proving the facts that establish its immunity under the Eleventh Amendment"); *Mancuso v. New York State Thruway Auth.*, 86 F.3d 289, 292 (2d Cir. 1996) (to be entitled to immunity the asserting party must "demonstrate that it is more like 'an arm of the State,' such as a state agency, than like "a municipal corporation or other political subdivision.").[1] As argued below, Defendant does not meet that burden.

## B. *Steadfast*, Not *Hunter v. Young*, Controls the Immunity Question Here

Before delving into application of the four-factor *Steadfast* test, it is worth noting that *Steadfast*, not *Hunter*, governs this appeal. Defendant (and much of his cited district court authority) relies heavily on *Hunter v. Young*, 238 F. App'x 336 (10th Cir. 2007), a case that provides no meaningful guidance on the issue here. The unpublished decision in *Hunter* was decided in June 2007, just a few months before this Court published the *Steadfast* opinion, in November 2007. *Compare Steadfast Ins. Co.*, 507 F.3d at 1250; *Hunter*, 238 F. App'x at 336. Significantly, in *Hunter* the plaintiff did not dispute that the sheriff was a state actor—the only Eleventh Amendment question on appeal was framed as a question of whether the

---

[1] Notably, in his opening brief Defendant did not address which party bears the burden of proof for Eleventh Amendment immunity. Accordingly, he has forfeited the right to contest this burden. *See, e.g., McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010) (appellant's failure to argue for and apply a standard of review forfeited the right to contest it); *COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1215, 1223 (10th Cir. 2016) ("Appellants do not raise this argument in their opening brief, and so it is waived.") (citation omitted).

State of Kansas had waived its immunity. 238 F. App'x at 338. Because the question was not squarely presented, the *Hunter* Court conducted no assessment of whether the sheriff was, in fact, a state actor, nor did it address the *Mt. Healthy* test or the question of how the state actor determination should be made had it been in dispute. Since it never addressed the issue, *Hunter* sheds no light on the question raised in this appeal, whether the sheriff is a state or county actor when carrying out law enforcement duties. *See Steadfast Ins. Co.*, 507 F.3d at 1253 (acknowledging previous court decisions referring to the entity as a state actor, but explaining that because the categorization was not expressly litigated in the prior cases, the Court needed "to consider the status … anew" for Eleventh Amendment immunity purposes).

Defendant argues that this Court should presume that the *Hunter* Court knew and followed the law, and thus implicitly applied *Mt. Healthy*. Def. Br. at 20-21. But because the *Hunter* Court framed the question before it as a waiver issue, not as a state versus county actor question, there is no basis for assuming that the Court was silently applying the test for categorization of state actors. Just a few months after *Hunter*, the *Steadfast* Court was explicitly called upon to do so, and it did so directly. Significantly, the *Steadfast* Court held that the state actor categorization should be reconsidered in light of the articulated test, notwithstanding prior cases assuming or stating that the entity was a state actor without conducting the

articulated test. *Steadfast Ins. Co.*, 507 F.3d at 1253. Accordingly, *Hunter* does not control this appeal.

### C. Application of the *Steadfast* Test Indicates that the Defendant County Sheriff Failed to Meet His Burden for Invoking Eleventh Amendment Immunity

Applying the *Steadfast* test demonstrates that Defendant is not entitled to invoke Eleventh Amendment Immunity for his law enforcement actions in this case.

Importantly, in assessing whether the Defendant County Sheriff acted as a state or county employee, this Court should not endeavor to pigeonhole Defendant "in some categorical, 'all or nothing' manner." *McMillian v. Monroe Cty., Ala*., 520 U.S. 781, 785 (1997). Rather, the Supreme Court explained in *McMillian* when considering a sheriff's categorization under Alabama law: instead of "seeking to make a characterization of Alabama sheriffs that will hold true for every type of official action they engage in[, we] simply ask whether Sheriff Tate represents the State or the county when he acts in a law enforcement capacity." *Id.*, 520 U.S. at 785-86. *See also Reyes v. Bd. of Cty. Comm'rs of Sedgwick Cty., Kan*., 2008 WL 2704160, at *7 (D. Kan. July 3, 2008) (The Supreme Court stressed [in *McMillian*] that the question is … whether the sheriff acted for the state in a particular area, or on a particular issue."). Indeed, in considering official capacity claims, courts routinely consider the role that the officer played, rather than the job

title as a general category. *See, e.g., McCaffrey v. Chapman*, 921 F.3d 159, 166 (4th Cir. 2019) ("We limit dismissals based on today's holding to those deputies actually sworn to engage in law enforcement activities on behalf of the sheriff. We issue this limitation to caution sheriffs that courts examine the job duties of the position, and not merely the title, of those dismissed.") (citation omitted); *United States v. Wright*, 634 F.3d 770, 777 (5th Cir. 2011) (discussing the distinction between deputy sheriff's jailers duties versus law enforcement activities and the prevention or detection of crime or enforcement of the penal laws); *Thaddeus-X v. Blatter*, 175 F.3d 378, 392 (6th Cir. 1999) (in prisoner's rights case, discussing the difference between the government interest as employer versus its interest as a jailor).

Thus, it does not matter whether the sheriff acts as an arm of the state in some capacities, such as when hiring employees or purchasing supplies—the relevant inquiry for this appeal is whether the Defendant County Sheriff acts as an arm of the state when carrying out his law enforcement supervision duties. Applying the *Steadfast* factors demonstrates that the Defendant here has not met his burden to prove that he is a state actor when supervising his law enforcement officers.

### 1. State Law Characterizes the County Sheriff as an Agent of the County

As the district court correctly held, Kansas law identifies the county sheriff as a county officer, not a state officer. App.00138-41. *See* K.S.A § 19-813 ("It shall be the duty of the sheriff and undersheriffs and deputies to keep and preserve the peace *in their respective counties*, and to quiet and suppress all affrays, riots and unlawful assemblies and insurrections, for which purpose, and for the service of process in civil or criminal cases, and in apprehending or securing any person for felony or breach of the peace, they, and every coroner, may call to their aid such person or persons *of their county* as they may deem necessary.") (emphasis added). In *Manley v. Bellendir*, 2019 WL 3430563, at \*4 (D. Kan. July 30, 2019), the court likewise concluded, "The first [*Steadfast*] factor supports this finding [of no immunity]: although the sheriff's duties are prescribed by the state, he is listed as a county officer and does his usual police work within the county, consistent with Kansas' view of law enforcement as the domain of the county, not the state." *Id. See also Reyes*, 2008 WL 2704160, at \*7 (finding that the first *Steadfast* factor refutes invocation of immunity).

Nevertheless, Defendant argues that the first of the *Steadfast* factors goes his way (although he refers only to the *Mt. Healthy* test, referencing the original Supreme Court case from which *Steadfast* derived and upon which it expanded). *See* Def. Br. at 11, 23. His arguments, however, are unavailing. To begin,

14

Defendant depends on broad language in *Bd. of Cty. Comm'rs of Lincoln Cty. v. Nielander*, 62 P.3d 247, 261 (Kan. 2003) ("*Lincoln Cty. v. Nielander*"), to argue that the Kansas Supreme Court has deemed the sheriff a state officer and that the federal courts must therefore defer to that assessment. Def. Br. at 11, 24. But the Kansas court in *Lincoln Cty. v. Nielander* was only adjudicating the sheriff's role in making hiring and firing decisions and purchasing office supplies; it did not address law enforcement duties at all. *See* 62 P.3d at 251, 261. Because this Court should reject a "categorical, 'all or nothing'" assessment of Defendant, *see supra* at pp. 12-13, the ruling in *Lincoln Cty. v. Nielander* has no bearing on the consideration at hand, whether Defendant was an officer of the state in carrying out his law enforcement duties specifically. *Id.*; App. 00137 (district court ruling, "It is not an all or nothing approach. [Cite]. Thus, the question here is whether the sheriffs are acting in a state or county capacity when they are engaged in local law enforcement activities."); *see also Van De Weghe v. Chambers*, 569 F. App'x 617, 621 n.3 (10th Cir. 2014) ("Although we typically "give deference to state court decisions regarding whether a given entity is an arm of the state ... we do not view these rulings as dispositive.") (quoting *Steadfast Ins. Co.*, 507 F.3d at 1253).

Defendant also argues that the office of sheriff is created and defined by state statute and therefore it must be defined as an agency of the state. Def. Br. at 17, 24. The law, however, does not support this blanket-rule construction. Instead,

the fact that the State of Kansas allows for or even creates an entity does not automatically render it "an agency of the state" under state law. *See Steadfast Ins. Co.*, 507 F.3d at 1253; *Baca*, 2019 WL 3938266, at *23 (when courts "evaluate whether an entity, including an entity labeled a state's 'department,' is an arm-of-the-state for … Eleventh Amendment immunity purposes, the analysis often includes a lengthy discussion of the features of the particular department") (citing *Ross v. Colo. Dep't of Transp.*, No. 11-cv-02603-REB-KMT, 2012 WL 5975086, at *5-6 (D. Colo. Nov. 14, 2012) (concluding the Colorado Department of Transportation did not meet its burden of proving it was entitled to Eleventh Amendment immunity despite the Department arguing it was a "'principal department' of the state of Colorado")); *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 n.23 (D. Kan. 2004) ("The Court disagrees with the Saline County defendants' argument that a county sheriff is a 'state official' and thus plaintiff's claim is barred by the Eleventh Amendment. Defendants fail to cite, nor was the Court able to find, Tenth Circuit cases holding that a county sheriff was a state official."). For instance, a Kansas statute provides for the bonding of warehousemen, but no one would suggest that this statutory framework renders bonded warehousemen arms of the state. *See* K.S.A. § 82-162. Thus, merely being created by state statute is not enough to meet the first test, and Defendant cites no authority suggesting otherwise.

Defendant also relies heavily on the fact that courts consider the county attorney to be a state actor, claiming that by analogy the county sheriff must therefore be a state actor as well. Def. Br. at 17, 24. But this attempted analogy instead underscores the lack of statutory support for calling the sheriff an arm of the state. By statute, the county attorney prosecutes crimes "on behalf of the State of Kansas," (Def. Br. at 24), and this duty to the state is expressly designated by statute. *See* K.S.A. § 19-703 ("Each county attorney, when requested by any judge of the district court of the county, shall appear *on behalf of the state* before such judge, and prosecute all complaints made *in behalf of the state* of which such judge has jurisdiction") (emphasis added). In fact, the statutorily described duty of the county attorney specifies that he or she has an express duty to people of the State of Kansas, regardless of whether the state or the county is the underlying interested party. *See* K.S.A. § 19-702(a).

In contrast, no similar designation exists for the county sheriff, whose peace keeping duty is instead expressly restricted to his own county. *Compare* K.S.A. § 19-703 (county attorney's duty to act on behalf of the state) and 19-702(a) (county attorney's duty to the people of the state) with K.S.A. § 19-813 (discussing sheriff's duty to his county). When the legislature has shown the ability to express its intent through clear statutory language, and it has omitted similar language in another statute, courts should recognize a different intent. *State v. Hopkins*, 285

17

P.3d 1021, 1024 (Kan. 2012); *State v. Lovett*, 839 P.2d 53 (Ct. App. Kan. 1992). Thus, the Kansas State Legislature's absence of comparable language for the sheriff's duties means that there was no statutory intent to establish the county sheriff as a state actor. *Id.*

Because of the express duty to the State of Kansas outlined in the statutory designation of county attorney—a duty absent in the county sheriff's description—Defendant's extensive reliance on *Nielander v. Bd. of Cty. Comm'rs of Republic Cty.*, 582 F.3d 1155, 1164 (10th Cir. 2009) ("*Neilander*"), is misplaced. *See* Def. Br. at 2, 8, 10, 16-17, 27, 33. In *Nielander*, the Court added in *dicta* that although the defendant had not even raised Eleventh Amendment immunity, in Kansas, "county attorneys act on behalf of the state, not their respective counties." *Id.* (citation omitted). There is no basis for finding that the Court's brief *dicta* assessment of county attorney duties controls the designation of county sheriff. Instead, the absence of statutory designation for the county sheriff indicates that the opposite conclusion is required. *Hopkins*, 285 P.3d at 1024; *Lovett*, 839 P.2d 53.

Defendant's other case citations are similarly unhelpful. Specifically, in *Vasquez v. Lewis*, 2013 WL 118442, at *3 (D. Kan. 2013), the defendants were employees of the State of Kansas and the plaintiff conceded Eleventh Amendment immunity; and *Miles v. Kansas*, 2012 WL 3442413, *2-3 (D. Kan. 2012), and

*Kjorlie v. Lundin*, 1991 WL 290452, at *1 (D. Kan. 1991), likewise, were suits against State of Kansas employees, begging the question presented here. Def. Br. at 25. But Defendant argues that because the Eleventh Amendment applied to those state employees, and the sheriff's duties are, according to him, "indistinguishable," from the state officers sued in those cases, he is entitled to immunity. Def. Br. at 25. However, Defendant offers no authority for this expansive reading of the law (because there is none). First of all, there is no support for Defendant's claims that the duties of the employees are virtually the same. But even if there was, it would not follow that those similarities entitle non-state employees, as a matter of law, to a constitutional immunity from suit established to protect state actors. For instance, a private college administrator could not claim that because her duties were "indistinguishable" from the duties of a state college administrator, she is entitled to the same constitutional protections afforded to state employees. There is no support for this broad extension of Eleventh Amendment immunity.

Nor do Defendant's remaining district court case citations help him with the first factor of the *Steadfast* test. In *Brown v. Kochanowski*, 2012 WL 4127959, at *9 n.3 (D. Kan. 2012) (aff'd on other grounds, 513 F. App'x 715 (10th Cir. 2013)) (Def. Br. at 18), the district court found the Eleventh Amendment applicable in a brief footnote, citing *Hunter*, with no discussion of the *Steadfast* factors. In *Waterman v. Tippie*, 2019 WL 2924997, at *1 (D. Kan. July 8, 2019) (Def. Br. at

19

19), the court again relied on *Hunter* with no analysis, and in any case, the sheriff at issue was not acting in his law enforcement capacity. And in *Kellogg v. Coleman*, 2019 WL 2207954, at *10-11 (D. Kan. 2019) (Def. Br. at 19), the court's assessment of the first factor relied on *Hunter* (which was dicta with no *Steadfast* adjudication) and *Lincoln Cty. v. Nielander* (where the sheriff was acting as an employer and equipment purchaser), which both fail to answer the question of whether a sheriff is an arm of the state when acting in his law enforcement capacity.

The district court in *Self v. Cty. of Greenwood*, 2013 WL 615652, at *2 (D. Kan. 2013) (Def. Br. at 18), briefly alluded to the *Steadfast* factors, but it failed to analyze the relevant statutory provisions. The *Self* court cited Kan. Const. art. IX, § 2 ("The legislature shall provide for such county and township officers as may be necessary") without looking at the specific statutes relating to the sheriff, including K.S.A. § 19-813 (discussing sheriff's duty to his county). Moreover, the *Self* court was exclusively concerned with the sheriff as jailer, not as law enforcer. 2013 WL 615652, at *1. Thus, the case does not guide the adjudication here.

In *Myers v. Brewer*, 2018 WL 3145401, at *6 (D. Kan. 2018) (aff'd on other grounds, 773 F. App'x 1032 (10th Cir. 2019)) (Def. Br. at 18-19), the court relied on: (1) the prior cases distinguished above; (2) the fact that the office of sheriff was created by state law, which as this Court held in *Baca*, 2019 WL 3938266, at *23,

is not the dispositive inquiry; and (3) the fact that "Sheriffs in Kansas are required—by statute—'to keep and preserve the peace in their respective counties…'" which supports viewing the sheriff as a local, county actor, rather than a state actor.

Finally, Defendant lists cases analyzing sheriffs' characterizations in other states. Def. Br. at 15-16. However, as Defendant himself recognizes, the question of immunity "must be determined in each case by reference to the particular state laws characterizing the entity." Def. Br. at 14 (quoting *Sturdevant*, 218 F.3d at 1164) (citations omitted). Thus, for example, whether a Connecticut or Virginia sheriff was a state actor when making employment decisions has no relevance to the question at hand. *See Walker v. Connecticut*, 106 F. Supp. 2d 364, 369 (D. Conn. 2000) (Def. Br. at 16); *Bland v. Roberts*, 730 F.3d 368, 371 (4th Cir. 2013) (Def. Br. at 16). Nor does *McMillian*'s analysis of Alabama law under the Alabama state constitution and Alabama court precedents dictate the role of a Kansas county sheriff. Def. Br. at 31-32. *McMillian*, 520 U.S. 781, 787-93. Defendant makes no effort to compare the state laws in the distant states to Kansas' laws, and the unique nature of each's characterizations renders these citations irrelevant.

Moreover, if this Court finds other jurisdictions persuasive, it is noteworthy that virtually every Circuit that has considered whether a sheriff was acting as a

state actor has concluded that when the county sheriffs were acting in their law enforcement capacity, they were county, not state, actors and therefore not entitled to Eleventh Amendment immunity. *See, e.g., Franklin v. Zaruba*, 150 F.3d 682, 685 (7th Cir. 1998) (applying *McMillian* and concluding, "Illinois sheriffs are county officers and not agents of the state when performing their typical law enforcement duties"); *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1304 (11th Cir. 2005) (applying *McMillian*, collecting cases, and concluding, "As to our precedent, we have repeatedly held that Florida's sheriffs are not arms of the state"); *Reid v. Hamby*, 124 F.3d 217 n.1 (10th Cir. 1997) (unpublished) ("an Oklahoma sheriff is the policymaker for his county for law enforcement purposes."); *Carter v. Barker*, 225 F.3d 653, *3-4, *6 (4th Cir. 2000) (*per curium*) (applying *McMillian* and holding that the Eleventh Amendment did not bar official capacity suit against sheriff relating to his failure to supervisor, investigate, or reprimand his subordinate and failure to intervene); *Brewster v. Shasta Cty.*, 275 F.3d 803 (9th Cir. 2001) (applying *McMillian* to California sheriffs and finding that they were county actors, so Eleventh Amendment immunity did not apply for Section 1983 claims); *Crabbs v. Scott*, 786 F.3d 426, 430 (6th Cir. 2015) (explaining that official-capacity suits against the sheriff challenging law enforcement policies normally proceed as suits against the county, not entitled to Eleventh Amendment immunity); *Dean v. Cty. of Gage, Neb.*, 807

F.3d 931, 942 (8th Cir. 2015) ("based on the *McMillian* factors, Sheriff DeWitt

represents the county in the area of law enforcement investigations and arrests").

In sum, Defendant has not met his burden to show that Kansas state law

identifies the sheriff as a state actor instead of a county actor.

### 2. The Defendant Sheriff Maintains Autonomy from the State for His Law Enforcement Duties

In considering the second *Steadfast* factor—the sheriff's autonomy from the

state and "the degree of control the state exercises over" the sheriff (*Steadfast*, 507

F.3d at 1253)—the district court found that "pertaining to setting policy on the use

of force and the responsibility for the actions of the deputies, the sheriffs in this

action have autonomy from state control." App.00141. This finding is plainly

supported by the Kansas Supreme Court, which held in *State v. Vrabel*, 347 P.3d

201, 211 (Kan. 2015), that the state's statutory framework is designed to give both

cities and counties local autonomy in the context of law enforcement:

> But, by not granting statewide jurisdiction to all law enforcement officers, the legislation maintained local control by cities and counties, protecting them from unwanted intrusion by neighboring law enforcement officers over whom the invaded territory would have no control. For instance, the governing body of a city may endeavor to establish stringent policies on the use of force by law enforcement officers against the citizens of that city, but it would be hard-pressed to enforce its regulations against marauding law enforcement officers from other jurisdictions.

*Vrabel*, 347 P.3d at 210-11.

23

Nevertheless, Defendant argues that because the sheriff was historically an agent of the King, this Court should recognize sheriffs as state agents. Def. Br. at 27 (citing *McMillian*, 520 U.S. at 793). But this Court's Eleventh Amendment immunity test in *Steadfast* requires a present-day inquiry into the sheriff's level of autonomy. *See Steadfast*, 507 F.3d 1253-57 (applying the four factor test by looking at contemporaneous circumstances); *Hamer v. City of Trinidad*, 924 F.3d 1093, 1104 (10th Cir. 2019) (noting that present tense language implies the need to look at current experiences). The role sheriffs historically played *vis a vis* the King of England simply has no relevance here.

Defendant also contends that the sheriff lacks full local control in certain contexts, but notably, the only relevant context for this appeal—law enforcement duties—is not one of the contexts Defendant addresses. *See* Def. Br. at 25, 30-32. Defendant fails to meet his burden with regards to the second *Steadfast* factor because he does not present any argument about how the sheriff's role as law enforcer lacks autonomy from the state, and this Court should not infer a lack of local control in law enforcement based on the sheriff's level of autonomy in other contexts. *See, e.g., McCaffrey*, 921 F.3d at 166 ("We limit dismissals based on today's holding to those deputies actually sworn to engage in law enforcement activities on behalf of the sheriff. We issue this limitation to caution sheriffs that courts examine the job duties of the position, and not merely the title, of those

dismissed.") (citation omitted); *Wright*, 634 F.3d at 777 (discussing the distinction between deputy sheriff's jailers duties versus law enforcement activities and the prevention or detection of crime or enforcement of the penal laws); *Thaddeus-X*, 175 F.3d at 392 (discussing the difference between the government interest as employer versus its interest as a jailor). By failing to address the second *Steadfast* factor as it applies to the sheriff in his law enforcement capacity, Defendant has forfeited the right to do so on reply. *COPE*, 821 F.3d at 1223 (10th Cir. 2016) (arguments not raised in the opening brief are waived).

Forfeiture aside, there is no argument to be made: When the sheriff acts in his law enforcement capacity, his control is autonomous within his county. *See* K.S.A. § 22-2401a (1) (sheriffs "may exercise their powers as law enforcement officers…[a]nywhere within their county; and …in any other place when a request for assistance has been made by law enforcement officers from that place or when in fresh pursuit of a person."); *Vrabel*, 347 P.3d at 211 ("In short, it is apparent that the statutory limitations on the jurisdiction of city officers was put in place to protect the local autonomy of neighboring cities and counties"); *Manley*, 2019 WL 3430563, at *4 ("the sheriff has the power to set the policy of his office, including the use of force") (citing *Estate of Holmes v. Somers*, 2019 WL 1670796, at *17 (D. Kan. 2018)).

Although the sheriff as jailer is a different role than the sheriff as law enforcement officer, and the two should be treated differently for Eleventh Amendment purposes (*see McMillian*, 520 U.S. at 785-86; *Reyes*, 2008 WL 2704160, at \*7; *McCaffrey*, 921 F.3d 1at 166; *Wright*, 634 F.3d at 777; *Thaddeus-X*, 175 F.3d at 392), Defendant discusses the nature of a sheriff's duty with regards to jail costs and administration in an effort to find an instance of lack of sheriff autonomy. Def. Br. at 25, 30-31. Even if this analysis was relevant, however, it does not support the conclusion that the sheriff is a state actor.

First, Defendant cites K.S.A. § 19-1901 (Def. Br. at 25), which provides, "There shall be established and *kept at every county seat, by authority of the board of county commissioners, at the expense of the county*, a jail for the safekeeping of prisoners lawfully committed." (emphasis added). This statute obviously reinforces sheriff autonomy rather than delegating oversight of the sheriff to the state. Next, Defendant cites K.S.A. § 19-1903 (Def. Br. at 25), which begins, "The sheriff of the county by himself or deputy shall keep the jail, and shall be responsible for the manner in which the same is kept." That section likewise supports sheriff autonomy and contains no provision suggesting state oversight. Finally, Defendant cites K.S.A. §19-1909, 1910, 1916, 1917, and 1930, provisions dealing with what happens when the county jail accepts prisoners under certain circumstances or from other jurisdiction and how the county gets paid in those situations. (Def. Br.

at 25-26, 31). None of the cited statutes, however, mentions state oversight of the county's decision-making under those circumstances, so it is unclear why any would render the sheriff-as-jailer an arm of the state, particularly in light of K.S.A. § 19-1901 and 1903, expressly supporting the sheriff's autonomy. Regardless of where the prisoners came from, the sheriff would still be responsible for jail management and the day-to-day decision making around prisoner care. K.S.A. § 19-1903.

Defendant also argues that the State may initiate an action to oust an errant sheriff, citing two statutory provisions that do not discuss this theory. Def. Br. at 30 and 32 (citing K.S.A. § 8-605, the attorney general's duties under the Automobiles and Other Vehicles statute, Article 6, Fair Trades; and K.S.A. § 60-1202, jurisdiction and grounds for relief in the form of *quo warranto*). Defendant provides no explanation or citation about how these provisions might, in theory, be applied to county sheriffs. He claims that the *Reyes* court noted that the two provisions "authorize initiation of an action 'to oust a sheriff for failure to perform law enforcement functions.'" Def. Br. at 30. But *Reyes* does not. Instead, the *Reyes* court merely stated that the defendants in that case argued the statutes' applicability—there was no finding that the statutes actually apply, and the *Reyes* court instead expressly concluded that "the sheriff of Sedgwick County enjoys significant autonomy from state control." *Reyes*, 2008 WL 2704160, at *8.

Finally, Defendant highlights that the sheriff has many non-law enforcement duties, like issuing writs, serving jury summons, transporting prisoners, and confining prisoners. Def. Br. at 31. None of those duties, however, relate to the sheriff's autonomy when conducting his law enforcement duties, the only relevant inquiry for this appeal. And, along a similar vein, Defendant returns to *Lincoln Cty. v. Nielander* and the sheriff's role in making hiring, firing, and purchasing decisions. 62 P.3d at 251, 261; Def. Br. at 31. But, as explained above, those roles have no relevance to the question at hand.

Were this Court to consider other contexts, beyond law enforcement duties, then it has already conclusively held that the sheriff is beholden to the county, not the state. *See, e.g., Owens v. Rush*, 636 F.2d 283, 286 (10th Cir. 1980) (in the Title VII context, holding, "The Sheriff is an agent of the County for all purposes under his control and jurisdiction."). Regardless, if this Court considers the relevant context—law enforcement duties—Defendant has not provided a single statutory citation or case suggesting that under Kansas law a county sheriff in the state has less than full autonomy when carrying out his law enforcement duties. That is the pivotal inquiry. *See McMillian*, 520 U.S. at 785-86; *Reyes*, 2008 WL 2704160, at *7; *McCaffrey*, 921 F.3d 1at 166; *Wright*, 634 F.3d at 777; *Thaddeus-X*, 175 F.3d at 392. Defendant has failed to meet his burden.

### 3. The County Sheriff Receives His Funding Independent from the State

Defendant concedes that the counties are required to fund sheriff services and sheriff law enforcement obligations "with local effort." Def. Br. at 33. That concession should end the third *Steadfast* inquiry, relating to the amount of state funding the entity receives. *Steadfast Ins. Co.*, 507 F.3d at 1253. As the district court found, "The sheriff's annual budget is determined by the board of county commissioners and not the state." App.00141 (citing K.S.A. § 19-805(b), (c)). This factor plainly supports that the sheriff is not an arm of the State.

Defendant argues, however, that the Court should essentially disregard this factor because "[t]he Supreme Court's decision in *McMillian* marginalized the last two *Mt. Healthy* factors." Def. Br. at 32 (citing *McMillian*, 52 U.S. at 791-92 & n.7). But long after *McMillian*, this Court considered the *Mt. Healthy* requirements in devising the *Steadfast* test for determining whether entities in this Circuit are an arm of the state. *See Steadfast Ins. Co.*, 507 F.3d at 1253. Rather than "marginalizing" the state funding consideration, the Court instructed, "[W]e study the entity's finances." *Id.* The *Steadfast* Court then went on to give the financing factor thorough consideration and equal weight. *Id.* at 1255. Thus, this Court should not disregard Defendant's concession of the financial independence of the county sheriff—it supports the conclusion that the sheriff is not a state actor. Rather, the Court should follow the published authority of this Circuit, interpreting

and applying the earlier Supreme Court decisions in the context of this Circuit's needs and precedents. *Tafoya*, 557 F.3d at 1129; *Tootle*, 390 F.3d at 1283.

While it is not entirely clear, Defendant appears to also argue that because it is a state law that requires the local county to pay for its county sheriff services, the funding depends on a state statute and is therefore not independent and the sheriff is a state actor. Def. Br. at 33. This circular logic makes no sense, and Defendant's citation to authorities fails to support it. *See* Def. Br. at 33, citing *Neilander*, 62 P.3d at 255 (noting that if sheriff needs further financing, remedy is a *mandamus* against the board of county commissioners (not the state, as Defendant claims)); *Wilson v. City of Chanute*, 43 F. Supp. 2d 1202, 1216 (D. Kan. 1999) (discussing the characterization of county attorneys, not sheriffs); *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 431 (1997) (not supporting Defendant's parenthetical summary of the holding, but rather discussing when the state is liable but has an indemnifier).

Defendant merely attempts to minimize this factor; he does not dispute that application of it supports finding that the sheriff is not entitled to immunity. Def. Br. at 33.

### 4. Defendant Concedes the Final *Steadfast* Factor, Which Strongly Supports the District Court Finding that Defendant Was Not Entitled to Immunity

The *Steadfast* Court instructed that the final consideration for courts to use in determining whether an entity is an arm of the state is whether "the agency's function, composition, and purpose" indicate that the entity is primarily concerned with state or local affairs. *Steadfast Ins. Co.*, 507 F.3d at 1253. Defendant fails to acknowledge that this factor is even part of the test, much less to posit an argument meeting his burden of proof to show that the sheriff is primarily concerned with State, rather than local affairs. *See* Def. Br. at 23-24 (setting forth the earlier *Mt. Healthy* test for arm-of-the-state inquiries and citing the pre-*Steadfast* case *Sturdevant*, 218 F.3d at 1164, 1166-69); Def. Br. at 14 (setting forth the earlier *Mt. Healthy* test and citing the pre-*Steadfast* case *Ambus*, 995 F.2d at 994); Def. Br. at 20. (arguing that the Court could disregard the *Steadfast* test because the case "broke no new analytical ground"). Defendant's failure to address the fourth *Steadfast* factor in his opening brief means that he has forfeited the right to do so on reply. *COPE*, 821 F.3d at 1223 (10th Cir. 2016) (arguments not raised in the opening brief are waived). Plaintiff does not have an opportunity to address Defendant's reply arguments, so the presentation of new arguments would be profoundly unfair.

While it was Defendant's burden of proof to show that he was an arm of the state, rather than Plaintiff's burden to disprove it (*see supra* at pp. 9-10), application of the fourth *Steadfast* factor further supports that the sheriff-as-law-enforcer is a local actor, not an arm of the state. This appeal takes place pre-discovery, but even so, readily available public information indicates that the Harvey County Sheriff's Office ("HCSO") professes to be primarily concerned with county, not state, affairs. The official HCSO website declares, "Our mission is to protect our communities by providing service, *ensuring Harvey County* is a safe place to live, work, play and visit."

https://www.harveycounty.com/departments/sheriff.html (last checked 10/2/2019; emphasis added). Similarly, the HCSO Facebook page announces, "This social media page is created with the intention of demonstrating and explaining the services *available in Harvey County*…."

https://www.facebook.com/pg/HarveyCountySheriff/about/?ref=page_internal (last checked 10/2/2019; emphasis added). The official HCSO Twitter account's stated purpose is, "Protecting, supporting and educating the communities *of Harvey County*." https://twitter.com/harveycosheriff?lang=en (last checked 10/2/2019; emphasis added). Nothing about HCSO's public or online presence indicates that it is primarily concerned with state affairs, rather than county affairs. Moreover, the sheriff is a county employee, and any legal action based on sheriff misconduct

"may be prosecuted against the executors or administrators of such sheriff" rather than against the state. K.S.A. § 19-817. Thus, the final *Steadfast* factor overwhelmingly refutes that the sheriff acts as an arm of the state.

### 5. In Sum

To invoke Eleventh Amendment immunity, Defendant bore the burden to prove that he was entitled to it by demonstrating under the prevailing law that when he carries out his law enforcement duties he acts as an arm of the state. He has failed to meet that burden. He has not shown that the sheriff's office is identified as an agency of the state under state law; he has not demonstrated any state oversight or control of his law enforcement duties; he concedes that his office is locally funded, not state funded; and he posits no argument refuting the obvious inference, confirmed by the Harvey County Sheriff's Office's own public pronouncements, that his office is primarily concerned with county needs. Accordingly, Defendant's appeal should be rejected.

### D. Even if This Court Were to Consider the Arguments Offered by the Kansas Sheriff's Association, Those Arguments Fail to Change the Analysis

The Kansas Sheriff's Association ("the Association") has filed a motion for leave to file an amicus curiae brief, which Plaintiff opposes. The issue of whether to allow the potential brief has been referred to the merits panel and has not yet been adjudicated.

However, even if this Court decides to consider it, the proffered brief does little to advance Defendant's case because it echoes Defendant's error: the Association similarly ignores the *Steadfast* test entirely. Instead, the Association asks the Court to consider tangential statutory provisions and historical hearsay newspaper articles and letters as evidence that the sheriff is subordinate to the state. This approach fails for three reasons: (1) the proffered historical perspective is not relevant to the *Steadfast* test, which governs the outcome of the immunity inquiry; (2) the citations of hearsay newspaper articles and letters have no evidentiary value; and (3) the Court's inquiry must look to the sheriff's role specifically when acting in his law enforcement capacity, so the Association's examination of the sheriff's other duties (ranging from livestock sanitation to flood relief) are therefore not relevant.

### 1.  A Historical Perspective Is Not Relevant to the *Steadfast* Inquiry

As discussed above, the determination of whether an entity acted as an arm of the state entitled to Eleventh Amendment immunity depends on the four-factor *Steadfast* test. *Steadfast Ins. Co.*, 507 F.3d at 1253; *see also Baca*, 935 F.3d at 927. Significantly, nothing in the *Steadfast* test requires a historical analysis. *See Steadfast*, 507 F.3d 1253-57 (applying the four factor test by looking at contemporaneous circumstances). Instead, the present-tense language of the factors indicates that the courts should inquire into the entity's present statutory

34

identification, present level of autonomy, present funding, and present areas of focus in order to evaluate an entity's autonomy. *Id.*; *see also Hamer v. City of Trinidad*, 924 F.3d 1093, 1104 (10th Cir. 2019) (noting that present tense language implies the need to look at current experiences); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59 (1987) ("One of the most striking indicia of the prospective orientation of the citizen suit is the pervasive use of the present tense throughout [the statute]"). And a present-based inquiry makes sense: should a state hospital or state university convert to become a private institution, its historical status as a state entity would obviously not entitle its actors to qualify as an arm of the state for immunity purposes.

Thus, the main thrust of the Association's brief—that historically, the sheriff may have worked more in tandem with the state—has no legal significance. Nor does the Association offer any authority from within this Circuit indicating that it does. Historical instances of the governor purportedly making demands of the sheriff (which the sheriff may or may not have abided by) or of the sheriff helping the state rustle horses or shut down boxing matches have no relevance to the present day autonomy of the sheriff in relation to the four factors delineated in *Steadfast*.

## 2.  Newspaper Articles and Letters Are Not Proof

Because this appeal takes place at the motion to dismiss stage, neither party submits evidence proving the sheriff's role as a state or county actor. The Association attempts to remedy Defendant's failure to meet his burden of proof by submitting letters and newspaper articles discussing the sheriff's historical role. These documents are not only irrelevant (see Argument D(1)), they are also obviously hearsay and therefore of no evidentiary value. *See, e.g., New England Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646, 650 (10th Cir. 1989) ("The fact that the statement was in the form of a newspaper account reinforces its hearsay character, for the final product is not the reporter's alone, and it was not demonstrated that the statements as reported were accurate. The article was intended, after all, to capture the interest of … readers"); *Eller v. Trans Union, LLC*, 739 F.3d 467, 476 (10th Cir. 2013) ("We conclude that both letters were properly excluded as hearsay—out-of-court statements of declarants offered for the truth of the matter asserted.") (citing FED. R. EVID. 801(c)).

## 3.  The Sheriff's Autonomy in Law Enforcement is the Relevant Inquiry

Through its hearsay articles and statutory citations, the Association examines numerous extraneous sheriff duties that have nothing to do with modern day law enforcement and argues that these other duties or tangential statutory

provisions mean that the sheriff answers to the state executive and judicial branches, rendering him an arm of the state. However, it is the sheriff's role as a law enforcement officer that governs this inquiry. *See supra* at pp. 12-13. On a more general level, if that is the appropriate inquiry, this Court has already decisively ruled, "The Sheriff is an agent of the County for all purposes under his control and jurisdiction." *Owens*, 636 F.2d at 286. *See also Eames v. Bd. of Cty. Comm'rs of Cty. of Phillips, State of Kan.*, 733 F. Supp. 322, 324 (D. Kan. 1990) (citing K.S.A. 19-801a *et seq.* to support the holding that "[t]he sheriff and his deputies, including dispatchers, are employees of the county they serve").

Thus, the state bond requirement does not change the fact that the sheriff's annual budget remains independent from the state, determined by the board of county commissioners. App.00141; K.S.A. § 19-805(b), (c). Nor does sheriff cooperation with the State Livestock Commission, the Animal Health Commission, the state's emergency management plans, the state's military back in the 1800's, or his obedience of the law in general render him a state actor. Finally, any multijurisdictional law enforcement groups can only be formed at the sole discretion of the sheriff, with no oversight or infringement on county autonomy from the state. *See* K.S.A. § 19-828 ("*Any county* in the state of Kansas which borders another state, *with the agreement of the sheriff*, may enter into agreement with the political subdivisions in such other state's contiguous county to form a

multijurisdictional law enforcement group….") (emphasis added). The Association offers nothing disproving the sheriff's autonomy in county-wide law enforcement. Its amicus curiae brief should be rejected.

## <u>CONCLUSION</u>

The Defendant County Sheriff is not entitled to invoke Eleventh Amendment immunity for his exercise of law enforcement duties. Plaintiff respectfully asks that this Court affirm the judgment of the district court.

Respectfully submitted,

/s/  Debra Loevy
One of Plaintiff's Attorneys

Mark Loevy-Reyes
Debra Loevy
Loevy & Loevy
311 N. Aberdeen, 3rd floor
Chicago, IL  60607
(312) 243-5900
debra@loevy.com

Attorneys for Plaintiff-Appellee Wendy Couser

## <u>STATEMENT IN OPPOSITION TO ORAL ARGUMENT</u>

The Defendant-Appellant carried the burden of proof in this appeal, but he failed to acknowledge the operative test in this Circuit for assessing Eleventh Amendment immunity and failed to meaningfully argue the bulk of the factors under that test. His lapses make this a clear appeal with no need for oral argument. Moreover, Defendant may not attempt to remedy his forfeitures by arguing before the Court the positions that he forfeited in his opening brief. *United States v. Dahda*, 852 F.3d 1282, 1292 n.7 (10th Cir. 2017) (aff'd 138 S. Ct. 1491 (2018) ("[I]ssues raised for the first time at oral argument are considered waived."); *Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 805 (10th Cir. 1998) (same). Oral argument in this case is unnecessary to the adjudication.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,822 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(b)(iii) and 10th Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

*/s/ Debra Loevy*


## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing Appellee's Brief:

1. all required privacy redactions have been made per 10th Cir. R. 25.5;

2. if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

3. the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, and according to the program are free of viruses.

*/s/ Debra Loevy*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2019, I electronically filed the foregoing Appellee's Brief using the Court's CM/ECF system which will send notification of such filing to all counsel of record.

Toby Crouse
CROUSE, LLC
11184 Antioch, No. 253
Overland Park, KS 66210
tcrouse@crousellc.com
*Attorney for Defendant-Appellant*
*Sheriff Gay*

David R. Rogers
Kelsey N. Frobisher
FOULSTON SIEFKIN LLP
1551 North Waterfront Parkway, Ste. 100
Wichita, KS 67206
drogers@foulston.com
*Attorneys for Defendant-Appellant Sheriff*
*Gay*

Allen G. Glendenning
Michael C. Abbott
WATKINS CALCARA, CHTD.
1321 Main - Suite 300
P.O. Drawer 1110
Great Bend, KS 67530
glenden@wcrf.com
*Attorneys for Kansas Sheriff's*
*Association*

I additionally certify that seven (7) exact copies of the version submitted electronically of the foregoing will be deposited for delivery via UPS Overnight addressed to:

U.S. Court of Appeals
Office of the Clerk
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257

*/s/ Debra Loevy*